RAILWAY REGISTER MANUF'G Co. *v.* THIRD AVE. RY. Co. and others.

*(Circuit Court, S. D. New York.* October 15, 1887.)

PATENTS FOR INVENTIONS—FARE REGISTERS—LIMITATION OF CLAIM—INFRINGEMENT.

Claims 1, 2, 4 and 5 of letters patent No. 206,565, of July 30, 1878, to Charles B. Harris, for an "improvement in fare registers," must, by reason of the limitation of the boundaries of the invention in the description and in view of the prior state of the art as indicated by the Morgan-Brown British patent of August 15, 1877, (which sets forth three Italian fare registers and modifications thereof, the invention of Joseph Mazari, of Italy,) be limited to the specific mechanical devices which constitute the novelty of the combination. These devices are the employment of a direction indicator so organized in relation to the registering mechanism, both trip and permanent, that it cannot be changed to indicate a different direction of travel without first bringing the trip register to the starting point and so adapted to co-operate with the registering mechanism as, upon such change, to effect a transfer from the trip to the permanent register of the record of fares collected. So limited, these claims are not infringed by a fare register in which the permanent register is not actuated by the act of resetting the trip register, but only when the trip register is making its original record, and in which there is no locking device to detain the direction indicator, so that it cannot be moved until the trip register is reset at zero.

In Equity. Bill for injunction.

*E. W. Dickerson, Jr.*, for complainants.
*Frost & Coe*, for defendants.

WALLACE, J. The issue in this case involves the alleged infringement by the defendants of the first, second, fourth, and fifth claims of letters patent No. 206,565, bearing date July 30, 1878, granted to Charles B. Harris for "improvement in fare registers" and owned by the complainant. The charge of infringement of the fifteenth claim of the patent has been abandoned by complainant upon the hearing. The defendants insist that the fare register used by them is not an infringement of these claims, when limited, as they contend should be done in view of the prior state of the art, to the specific mechanical devices which constitute the novelty of the combination; and they also insist that the claims are void for want of novelty, unless thus limited. No other issue is presented by the proofs, and the defendants rely wholly upon documentary evidence, as explained by their expert, to sustain their position.

The improvements set forth in the patent belong to a class of devices which are designed to guard against the fraudulent manipulation of fare registers used on the cars of street railways, and analogously, by requiring the collector of fares to make a registry for each collection which cannot be omitted without exposure to detection, and which, when made, cannot practically be obliterated. As stated in the patent, the object of invention is—

"To furnish a fare register provided with means, etc., whereby the amount of fares or collections made during the travel of the cars or vehicle in each direction, will be permanently recorded and ascertained."

The patent describes the invention as follows:

"My invention consists of a fare register having an indicator or sign by which the direction of travel may be known, so organized that the indicator may not be changed to indicate a different direction of travel, without first making a permanent record of the fares collected. It further consists of the combination, with the registering mechanism of a fare register, of an indicator or sign showing the direction of the travel of the vehicle, inclosed in the same casing or receptacle with the registering mechanism, the indicator being so organized that it cannot be changed to indicate a different direction of travel, without first bringing the register to zero, or in a position indicating no registry. It further consists in the combination of primary registering mechanism, secondary permanent or transfer registering mechanism, and an indicator or sign showing the direction of travel, the indicator being so organized that it cannot be changed to indicate a different direction of travel, unless the primary register is at zero, or at a point indicating no registry, the setting of the primary register back to that point after a registry has been made transferring its record to the secondary or permanent registry. It further consists of a fare register provided with a window or opening to permit of inspecting the registering mechanism or record, and with a window or opening to permit of inspecting an indicator or sign which indicates the direction of travel of the car or vehicle. It further consists in the combination, in a single case, of registering mechanism. alarm mechanism, an actuator, handle or push bar for working the register and sounding an alarm, and an indicator which indicates the direction of travel, whereby the sounding of the alarm announces the registry of the fare, and the indicator shows in which direction of travel of the car or vehicle the registry was made. It also con-

sists in the organization, construction, and arrangement of the various details of the mechanism, as will be hereinafter specifically set forth."

After describing the casing or receptacle in which the registering mechanism and indicator are mounted, the specification states as follows:

"The registering mechanism consists of two sets—a primary mechanism for temporarily registering the fares collected on each separate trip or direction of travel of the car or vehicle, and a secondary mechanism, to which a transfer of the record of the primary register is made at the terminus of each direction of travel, to obtain a permanent record of the fares collected, the transfer being accomplished during the act of resetting or moving the primary mechanism back to the zero or starting point, in readiness to commence the registry of fares to be collected on the return or back trip of the car or vehicle."

The specification then proceeds to a detailed description of a primary register consisting of two disks or dials provided with figures so constructed and arranged as to record and display the number of fares corresponding with the number of actuations of the registering mechanism, through an aperture or window in the face of the receptacle, actuating mechanism, alarm apparatus, the secondary or permanent registering mechanism, suitable means for transferring the record made by the primary registering mechanism to the permanent registering mechanism, and an indicator or sign which is displayed through apertures in the face of the receptacle to visually denote to the passengers the direction of travel of the car or vehicle.    The specification continues as follows:

"To prevent the indicator being changed or shifted to indicate a different direction of travel, without first making a permanent record of the fares collected, and without moving the primary registry back to zero or the starting point, (beyond which point the registering disks cannot be carried, as the disk, B', will be locked by a paul, $b'$, mounted on a stud or arbor, $b''$, on the casing,) I provide the indicator-plate with notches, $s$, with which engage the tooth or projecting end of one arm, T, of a three-pronged latch, the latch being provided in this instance upon the arbor of the ratchet-wheel that actuates the bell-hammer, and is acted upon by a string which tends to keep the arm, T, normally in engagement with one of the notches, $s$.    The other arms, $T^1$ $T^2$, of this three-pronged latch are adapted, when the register is at zero, to vibrate the arm, $T^1$, into a notch, $t^1$, in the unit disk, B, of the primary register and the arm, $T^2$, into a similar notch, $t^2$, in the disk, B¹, of said register.    This will permit the indicator to be turned so as to bring the sign desired, indicating the direction of travel, opposite the window in the casing, the locking-arm, T, riding out of the notch, $s$, of the plate, and the other arms vibrating into the notches in the registering disks.    When, however, an operation of the register takes place, the notches in the primary disks are taken out of line with the prongs, $T^1$, T, of the three-pronged latch, which will effectually prevent the indicator-plate from being turned, as an attempt to turn the plate, except when the register is at zero, only brings the arms, $T^1$, $T^2$, in contact with the curved edges of the disks, which is not sufficient to carry the arm, T, out of the locking-notch."

The patentee closes the description of his invention in the specification as follows:

"I do not intend to limit myself to the precise construction and organization of the various parts of my improved register, they being susceptible of considerable variation without departing from the spirit of my invention.    I

do not, however, broadly claim a fare register having a primary or temporary, and a permanent or secondary registering mechanism, as that is not my invention."

The first five claims of the patent are as follows:

"(1) The combination, substantially as hereinbefore set forth, of a fare register with a direction indicator, locked from indicating a different direction of travel, without making a permanent record of the fares collected.

"(2) The combination, substantially as hereinbefore set forth, with the registering mechanism of a fare register, of an indicator or sign inclosed in the same casing with the registering mechanism, and incapable of being changed to indicate a different direction of travel, without resetting or bringing the register to the zero or starting point.

"(3) The combination, substantially as hereinbefore set forth, of primary or temporary registering mechanism, secondary or permanent registering mechanism, and an indicator or sign showing the direction of travel, and so organized that a different direction of travel cannot be indicated, without bringing the primary register to zero or starting point, and transferring its record to the permanent register.

"(4) The combination, substantially as hereinbefore set forth, of registering mechanism, an indicator or sign which indicates the direction of travel, and a surrounding casing provided with windows or openings therein, for the purpose of inspecting the register and the direction indicator or sign.

"(5) The combination, substantially as hereinbefore set forth, in a single case, of registering mechanism, alarm mechanism, an actuator, handle, or push-bar for working the register and sounding an alarm, and an indicator which indicates the direction of travel, whereby the sounding of the alarm announces the registry of the fare, and the indicator shows in which direction of travel of the car or vehicle the registry was made."

Respecting the prior state of the art, it appears from the testimony of the expert for the defendants, in explanation of the prior patents put in evidence, to which he refers, that the use of a duplex register, that is, trip registering mechanism and permanent registering mechanism in fare registers was not new, and that such registering mechanism with alarm mechanism actuated substantially after the mode of the complainant's patent, and contained in a casing exposing the registering operation through windows or apertures, had previously been employed together in fare registers. It was, doubtless, because the prior state of the art is as thus indicated that the complainant's expert asserts infringement of the claims by the defendants upon the theory that Harris was the first to employ in combination with these several devices a direction indicator such as described in the specification, and, therefore, that the claims should be broadly construed to cover every combination of such a direction indicator with the several devices which is an equivalent in producing the new result. He states that the invention of Harris relates to a fare register of the kind which contains a permanent register of the number of fares collected during a series of trips of the vehicle in which the register is employed, and a trip register which exhibits at all times during a single trip, figures indicating the number of fares collected upon that trip. He says:

"Harris' invention consists in combining with these two registers the additional element of a direction indicator, incapable of being changed to indi-

cate a different direction of travel, without resetting or bringing the temporary register to zero or the starting point, and hence showing in which direction of travel of the vehicle the indicated registry of fares collected was made. By means of this contrivance, the number of fares collected during a trip, and the direction of travel of the vehicle during which such fares were collected, are exposed to view so that they may be seen at a glance, not only by the inspector whose business it is to make a note of the indications of the apparatus at the end of each trip, but also at all times during the trip by passengers, and also by inspectors, who are unknown to the conductor, and may be employed to observe the register during the course of the trip."

The subordinate features of the invention consist in inclosing the apparatus in a suitable casing provided with windows or openings to permit the inspection of the register and direction indicator, and providing an alarm mechanism, which will attract the attention of passengers to the proper manipulation of the trip register by the collector.

The defendants rely upon the Morgan-Brown British patent of August 15, 1887, which sets forth three Italian fare registers, and modifications thereof, the invention of Joseph Mazari, of Italy, as an anticipation of the first and second claims of the complainant's patent. That patent describes and the drawings illustrate a direction indicator employed in a fare register, which fare register also employs a trip register and secondary registering mechanism. The direction indicator of this patent is so organized that it cannot be changed without first bringing the trip register to zero or the starting point, and this feature is distinctly pointed out. The apparatus differs materially in the arrangement and character of the devices which are combined in a fare register from that of the Harris patent. One object for which the apparatus is designed, is to indicate to the passengers, or to an inspector, what number of passengers are in the vehicle at any given time. But it contains registering mechanism with which the direction indicator co-operates, designed to enable an inspector to ascertain the number of fares collected on a single trip, and also the aggregate number of fares collected upon any number of trips, and is practically operative to effect this object. Whether this patent is of any value as an anticipation of the Harris patent or not, it is important as bearing upon the scope of his invention and the construction to be given to the claims. It is apparent, in view of the Morgan-Brown patent, that Harris was not the first to employ a direction indicator in a fare register, or to combine a trip register with a direction indicator, which could not be changed to indicate a different direction of travel, without first bringing the trip register to the starting point. Consequently, what Harris really did was to employ such a direction indicator with primary and secondary registering mechanism which was adapted to co-operate with such registering mechanism so as to effect a transfer from the former to the latter of the record of fares collected. The apparatus of the Morgan-Brown patent did not do this. Harris by doing it made an advance of utility.

The direction indicator is an element of each of the claims in controversy. It is plain from the language of the description that it is one so organized in relation to the registering mechanism that it cannot be

changed to indicate a different direction of travel, without first bringing the trip register to the starting point. To this end it is provided with a locking device, and a description is given of a suitable locking device by which the indicator plate engages with a three-pronged latch. The trip register cannot be brought to the starting point without actuating the permanent register, and transferring to that register a record of the fares received upon the trip. Consequently, the direction indicator cannot be changed without a permanent record being made of the fares collected on the trip. Although a direction indicator without this peculiar organization is useful, because when it has not been changed by the conductor at the end of any one trip the fact is apparent to the passengers in the car or to a detective, its usefulness as a new safeguard for exposing any attempt at fraudulent manipulation of the fare register to detection would be materially less if it were not so organized in relation to the primary and secondary registering mechanism that whenever it is changed, whether at the end of the trip or at any other time, the record made upon the trip register is not lost, but is transferred to the permanent register. The specification describes an indicator of this character. The essential novelty of the several inventions specified in the claims, consists in combining such a direction indicator with the other parts. Although the fourth and fifth claims, unlike the first and second, do not in terms make such a direction indicator a constituent, they are to be read as though such a direction indicator were specifically mentioned. No other indicator is described and they refer by implication to such an indicator as is described in the specification. The expert for the complainant assumes that the direction indicator of those claims is the same direction indicator as that in the first claim.

Registering mechanism substantially such as is described in the specification is also to be regarded as an element of each claim. As has been said, a claim for the combination of the direction indicator of the patent with any fare register, or with the registering mechanism of any fare register, literally construed, could not be maintained, because the novelty of such claims would be negatived by the Morgan-Brown patent. It is not claimed in behalf of the complainants that registering mechanism which does not include secondary as well as primary registering mechanism is the registering mechanism of the claims. But it is insisted that the term does not necessarily refer to registering mechanism by which the record on the permanent register is made from the trip register in any specified manner. It must be held that this contention is not tenable, and that the registering mechanism of the claim is such as will accomplish the transfer of the record from the trip register to the permanent register during the act of resetting the trip register. This characteristic of the registering mechanism is distinctly set forth in the specification, and cannot be eliminated from the claims. The registering mechanism is described as consisting of two parts, primary or trip, and secondary or transfer, mechanism, which makes a transfer at the terminus of each direction of travel "during the act of resetting or moving the primary mechanism back to the zero or starting point, in readiness to

commence the registry of fares to be collected on the return trip of the car or vehicle." The detailed description coincides with devices thus organized, and there is nothing in the specification to denote or imply that registering mechanism having this mode of operation is a preferable or subsidiary as distinguished from an essential feature. Unless het registering mechanism is of this character, it cannot co-operate with het direction indicator in performing the functions assigned to the latter, because the direction indicator is required to be so organized that it cannot be changed without bringing the primary register to zero and transferring its record to the secondary register.

The first and second claims are intended to discriminate between a combination in which the direction indicator cannot be changed without causing a transfer to be made from the trip register to the permanent register, and one in which it can be changed by being brought to zero without causing such a transfer. In either combination, a locking device by which the indicator cannot be changed unless the trip register be brought to zero, is indispensable. The second claim contains the further constituent of a casing to inclose the other parts. The fourth claim contains the additional constituent of a casing provided with openings. The fifth claim embodies all the constituents of the fourth together with alarm mechanism, and actuating mechanism for working the register and alarm machanism. It is to be observed that infringement of the third claim is not alleged, and that it differs from the first claim as that claim must be construed, only in a more particular specification of the parts required to make a permanent record of the fares collected, that is, in specifying the mode of operation of the co-operative devices. It would seem that this claim more particularly and distinctly points out the real invention of Harris than do the first or second claims.

There is some doubt whether the first and second claims are not void for want of novelty in view of the Morgan-Brown patent. There is room for fair argument that they are expressed in terms to comprehend, the first, any fare register having the direction indicator of the Harris patent, and the second, any registering mechanism of a fare register combined with such a direction indicator. The general statement in the patent of the essential features of the several inventions which are the subject of the patent, and the very guarded terms of the disclaimer at the end of the description, countenances the argument that these claims were intended to be as broad as their literal terms. The claim of the inventor in letters patent must be construed according to its terms; and, when its import is plain, resort cannot be had to the context for the purpose of enlarging it. A more liberal rule is indulged frequently when it is necessary to restrict or narrow the ordinary import of the language in order to secure the real invention of the patentee, and, preserve the claim from destruction. But the language of the supreme court in *White* v. *Dunbar*, 119 U. S. 47, 52, 7 Sup. Ct. Rep. 72, is applicable to both classes of cases. The court say:

"The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his patent is; and it is unjust to

the public, as well as an evasion of the law, to construe it in a manner different than from the plain import of its terms."

The specification here is well calculated to admonish the public that Harris was the first to employ an indicating register in combination or conjunction with a fare register or fare registering mechanism of any kind, and the language of the claim is equally well calculated to advertise the pretensions of the patentee to the monopoly of such an improvement. Nevertheless, this meaning is not to be ascribed to the claims unnecessarily; it is not necessary for present purposes to decide that they must receive such a construction, and the conclusion is reached that they should receive the narrower interpretation which has been indicated.

The fare register of the defendants is one in which the permanent register is not actuated by the resetting of the trip register during the act of moving the latter back to the zero or starting point. In their register the permanent register is not actuated by the act of resetting the trip register, but is actuated only when the trip register is making its original record. At each actuation of the trip register in their apparatus, the permanent register is actuated, and not otherwise. For this reason their apparatus does not contain the registering mechanism which is an element of each claim. Nor does the fare register of the defendants contain any locking device which detains the direction indicator so that it cannot be moved until the trip register is reset at zero. It is this device in the Harris' invention, which, not only prevents the indicator from being changed until the trip register is reset, but also prevents it from being changed until the record of the trip register has been transferred to the secondary register. In the defendants' register the indicator not only can be, but must be, changed before the trip register is reset. This feature of the apparatus precludes the possibility of an accidental omission on the part of the collector to change the direction indicator when resetting the trip register.

Thus it will be seen that the principle of the Harris invention and of the defendants' apparatus differs in this: that while the former depends upon the locking of the direction indicator when the trip register is recording fares and the unlocking to reset the trip register and transfer its record of fares to the permanent register, the apparatus of the defendants makes both a trip registry and a permanent registry of fares whenever a single fare is registered, independently of the co-operation of the indicator, and the indicator must be changed before the trip register is reset. If Harris had been the first to employ a direction indicator with registering mechanism and had not circumscribed the boundaries of his invention by his description in the patent, the question of infringement would be presented in a very different aspect. Obviously it was not invention merely to employ an indicator in a fare register having primary and permanent registering mechanism when one had previously been employed in a fare register having only primary or trip registering mechanism. Invention could consist in a combination of an indicator with both or either registering mechanism, in which the devices would co-operate to contribute some new function or mode of operation to the

other, but not in bringing them into such juxtaposition to allow each to work out its own effect and produce an aggregate of results. Although the Morgan-Brown patent had shown a combination between the indicator and trip register, it was open to Harris to invent a new one, or one between the indicator and a trip register and a permanent register. But after he had done this it was open to others to make a combination between the same parts which would accomplish a similar result by a different organization, introducing a different mode of operation. This has been done in the apparatus of the defendants.

It follows that the defendants do not infringe, and the bill must be dismissed.